```
          UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                              CRIMINAL ACTION NO.  2:04-00162

**GREGORY BRENT STOWERS**
**JERRY ALLEN WEAVER**
**RALPH DALE ADKINS**
**WANDELL ADKINS**
**CLIFFORD ODELL VANCE**
**TONY DINGESS**


### MEMORANDUM OPINION AND ORDER

Pending are (1) defendant Gregory Brent Stowers' motions (a) to dismiss, filed June 6, 2005; (b) to join and adopt former co-defendant Jackie Adkins'[1] renewed motion to dismiss, filed July 21, 2005, (c) to dismiss, filed September 29, 2005, and (2) defendant Jerry Allen Weaver's motion to dismiss, filed September 22, 2005, and (3) defendant Ralph Dale Adkins' September 29, 2005, motion to join the motions filed by defendant Stowers and former co-defendant Adkins relating to alleged First Amendment violations.  The arguments contained in the motions all appear to trace their origins to those appearing in defendant Jackie Adkins' motion to dismiss, filed April 29, 2005.

---

[1] On August 2, 2005, the court granted the government's motion to voluntarily dismiss Jackie Adkins from the case.

I.

On May 11, 2004, a statewide primary election was held. An Assistant United States Attorney joined members of the Federal Bureau of Investigation ("FBI"), Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), the West Virginia State Police, and other agencies at various locations in Lincoln County. Their joint purpose was to conduct covert surveillance near polling places where they suspected illegal vote buying might occur.

The government agents used cameras, drive-by surveillance, and wired informants, some of whom recorded conversations in polling places. The agents also recorded license numbers of automobiles visiting at least one polling location. Defendants also contend the agents crossed the three-hundred (300) foot boundary line around polling places, a sacrosanct area required by state law to prevent politicking in proximity to voting. Further, government agents followed and questioned two women who had visited the Ferrelsburg precinct and pulled in their driveway when they returned home.

Based upon these activities, Jackie Adkins, later joined by the above-named defendants and others who generally adopted their co-defendants' motions, moved to dismiss the

superseding indictment and the two charging instruments that later followed it.  Alternatively, the defendants moved to suppress any evidence generated from the government's surveillance, along with any fruits traceable to it.

Defendants contend the foregoing investigative activities violated the First Amendment rights of those citizens who were subject to them either directly or indirectly.  The government responds that it complied with all of its internal policies and sought only to pursue leads on pervasive evidence of vote buying previously uncovered in Lincoln County.  It contends the affected assistant United States Attorney and the agents only watched and listened while in proximity to voting activities.

II.

A.   Dismissal

Although no party discusses it, the governing standard for dismissal of an indictment based upon governmental misconduct is settled in this circuit.  In United States v. Derrick, 163 F.3d 799 (4th Cir. 1998), the court of appeals reviewed a district court's dismissal of five indictments on the basis of

3

governmental misconduct.[2]  Judge Luttig, writing for the panel, observed in categorical terms that governmental misconduct, standing alone and however serious, is an insufficient basis upon which to dismiss an indictment:

> [I]n Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), the Court reaffirmed its analysis in Hasting and squarely held that a court has "no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct." Id. at 263, 108 S.Ct. 2369.
>
>     . . . .
>
> Other Supreme Court cases likewise confirm that a court's supervisory power cannot be exercised to dismiss indictments for government misconduct absent a showing of prejudice to the defendants. See, e.g., United States v. Morrison, 449 U.S. 361, 365-67, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (holding that dismissal of an indictment was an inappropriate remedy for an alleged Sixth Amendment violation that did not prejudice the defendant, even though the conduct of the government agents was "egregious")[.]

Id. at 807 (emphasis added).

---

[2]Although the opinion mentions prosecutorial misconduct throughout, there were also allegations, as here, of investigatory agent misconduct as well.  See, e.g., Derrick, 163 F.3d 806 n.3 ("'It is the opinion of the court, however, that some of the investigators and lead prosecutors got lost on their way to the lofty goal of weeding out drugs and corruption from the South Carolina State House.'")(quoting district court opinion); id. at 816 (noting an FBI failure to turn over to the United States Attorney certain reports of witness interviews); id. at 822 (noting district court's suggestion that an FBI special agent committed perjury in connection with the case).

Assuming defendants have adequately demonstrated the government's surveillance activities were conducted in violation of the First Amendment, there has been no showing to date of how that putative violation prejudiced the defense. Absent such a showing, Derrick teaches that dismissal is inappropriate.

B. Suppression

Throughout their briefing, defendants analogize their First Amendment suppression request to the settled remedy applicable to violations of the Fourth Amendment. In relying upon the Fourth Amendment in this manner though, defendants are subject to the settled rules that have developed thereunder for invoking the remedy.[3] One significant rule was discussed in

---

[3] Although the parties have not developed the matter in an analytical sense, it appears the Fourth Amendment is a necessary component when one seeks suppression based upon First Amendment violations in the criminal context: "Absent some action taken by government agents that can properly be classified as a "search" or a "seizure," the Fourth Amendment rules designed to safeguard First Amendment freedoms do not apply." Maryland v. Macon, 472 U.S. 463, 468-69 (1985) (some citations omitted). The Supreme Court went on to observe as follows:

> A search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." Here, respondent did not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact
> (continued...)

**Minnesota v. Carter**, 525 U.S. 83, 88 (1998):

> [W]e held that in order to claim the protection of the Fourth Amendment, <u>a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable</u>; <u>i.e.</u>, one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." <u>Id.</u>, at 143-144, and n. 12, 99 S.Ct. 421. <u>See also</u> <u>Smith v. Maryland</u>, 442 U.S. 735, 740-741, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).
>
> The Amendment . . . indicates that [it] <u>is a personal right that must be invoked by an individual</u>. See <u>Katz v. United States</u>, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("[T]he Fourth Amendment protects people, not places"). But the extent to which the Fourth Amendment protects people may depend upon where those people are. We have held that "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." <u>Rakas</u>, <u>supra</u>, at 143, 99 S.Ct. 421. <u>See also</u> <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 106, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

<u>Id.</u> at 88.

---

[3](...continued)
business. . . . The officer's action in entering the bookstore and examining the wares that were intentionally exposed to all who frequent the place of business did not infringe a legitimate expectation of privacy and hence did not constitute a search within the meaning of the Fourth Amendment. See <u>Katz v. United States</u>, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed.2d 576 (1967) ("<u>What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection</u>").

<u>Maryland v. Macon</u>, 472 U.S. 463, 468-69 (1985) (some citations omitted)(emphasis added). The surveillance activities here occurred in public areas. Further, although failing in some respects, the agents attempted to cloak their investigative activities to avoid undue interference with election day events.

Defendants contend law enforcement should not observe private citizens on election day.  They fail, however, to tailor that contention to demonstrate how their individual First or Fourth Amendment rights, personal to them, were invaded as a result.[4]  Absent such a showing, the suppression request necessarily fails.

---

[4]The lone exception is Ralph Dale Adkins, whose motion states as follows:

> The cassette of the May 14, 2002 meeting between Benny Flowers and Ralph Dale Adkins includes [a] tape recording at the voting precinct during the Voting [sic] process in violation of the First Amendment.  The recording merely shows Ralph Adkins handing Benny Flowers a ten-dollar bill when Benny Flowers is complaining about his back and asking Ralph for a pain pill.  No mention of an Agreement on voting is present on the recording.

(Ralph Dale Adkins' Mot. to Join at 1.)  Adkins cites no case law in support of his conclusions.  It would appear, however, that more than a mere recorded conversation, wherever it might take place, on election day would be required to demonstrate an impact on associational rights.  See United States v. Corona-Chavez, 328 F.3d 974, 981 (8th Cir. 2003) ("It is well-established in Fourth Amendment jurisprudence that a person engaged in a conversation assumes the risk that another party to the conversation might choose to divulge or even record the conversation."); 1 Wayne R. LaFave, Search And Seizure: A Treatise On The Fourth Amendment, § 2.2 ("There remains to be mentioned one particular way in which eavesdropping equipment may be utilized without violating . . . the Fourth Amendment: in conjunction with a secret agent, where the equipment makes a record of or permits others to hear that which the suspect has said in his conversation with the agent.")

III.

Based upon the foregoing, the court ORDERS that the pending motions relating to dismissal or suppression on First Amendment grounds be, and they hereby are, denied.

The Clerk is directed to forward copies of this written opinion and order to the defendants, all counsel of record, the United States Probation Department, and the United States Marshal.

DATED: November 23, 2005

John T. Copenhaver, Jr.
United States District Judge